IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANGELA M. WOOD, as Personal Representative of the Estate of Joseph Wood, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:19-cv-511-MHT-WC ) |
| JEFFERSON DUNN, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS JEFFERSON DUNN AND GARY MALONE**

COMES NOW, Defendants Jefferson Dunn and Gary Malone ("Defendants") and submit this Memorandum Brief in Support of the contemporaneously filed Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and the Federal Rules of Civil Procedure.  As grounds for so moving, the Defendants state as follows:

**I.    Standard of Review.**

A motion to dismiss brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the subject-matter jurisdiction of the Court. *Williams v. Jackson*, 2013 WL 5954392, \*1 (M.D. Ala. Nov. 7, 2013) citing, *McElmurray v. Consol. Gov't of August-Richmond Cnty.,* 501 F. 3d 1244, 1251 (11th Cir. 2007). A facial attack under this rule evaluates whether the complaint "'sufficiently allege[s] a basis of subject matter jurisdiction.'" *Id.*, quoting *McElmurray*, 501 F.3d at 1251.

A motion to dismiss pursuant to 12(b)(6) attacks the legal sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S. Ct. 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). The Supreme Court has identified two working principles for the district court to use in evaluating if a complaint is plausible on its face. First, the court must assume the veracity of well-pleaded factual allegations. *Latham v. Precision Strip, Inc.*, 2013 WL 6196105, *2 (N.D. Ala. Nov. 27, 2013); citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. The court should not, however, accept as true any legal conclusions that are phrased as a factual allegations or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Latham,* 2013 WL 6196105 at * 2, quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. After determining the factual allegations that are well-pleaded, the district court then proceeds to the second prong, which is to determine if the claims have plausibility. *Id*., citing *Iqbal* 556 U.S. at 679, 129 S.Ct. 1950.

## II.     Plaintiff has failed to state any plausible claim against Defendants.

The Plaintiff has not stated a plausible claim against Defendants. In *Iqbal*, the Supreme Court suggested a two-pronged approach for the district courts use in reviewing motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Assoc. v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010), quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

In accordance with *Iqbal*, this Court should first eliminate any allegations that are merely legal conclusions.  The only allegations against these Defendants describe their job duties.  All other allegations are collectively directed to "Defendants."

The purported "factual allegations" against the Defendants are wholly conclusory and speculative.  They are nothing more than legal conclusions, barely couched as factual allegations, and as such they cannot support any of the Plaintiff's claims for relief.  In *Iqbal*, for example, the plaintiff alleged that Attorney General Ashcroft was the "principal architect" of the policy at issue,

2

and that FBI Director Mueller was "instrumental" in adopting and executing the policy. The Supreme Court found that these allegations were nothing more than a "formulaic recitation of the elements" and were wholly conclusory and not assumed to be true. *Iqbal*, 556 U.S. at 681, 129 S.Ct. at 1937. The same is true for the Plaintiff's allegations against Defendants as to their alleged deliberate indifference. Plaintiff's conclusory statements which are nothing more than formulaic recitations of the elements are not assumed to be true. When this Court eliminates allegations that are merely legal conclusions, it will in fact eliminate all Plaintiff's claims against the Defendants.

**III.    Plaintiff has Failed to State a Claim Upon Which Relief Can be Granted on the Claim of Deliberate Indifference Against the Defendants.**

The Plaintiff has charged Defendants with deliberate indifference and failure to protect. However, there is no respondeat superior liability in § 1983 cases. The Eleventh Circuit has held, "[i]t is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior*." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citing *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992)). Moreover, the standard by which a supervisor is held liable for the actions of a subordinate is "extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Supervisors can only be held liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez*, 325 F.3d at 1234 (citing *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)); *see also Cottone*, 326 F.3d at 1360 (citing Gonzalez). "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy . . . resulted in deliberate indifference to

constitutional rights.'" *Id*. at 1235 (citations omitted). "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. at 1236. As stated previously, Plaintiff has not stated any plausible allegation of fact against the Defendants. Plaintiff has not alleged that they were directly involved in any acts or omissions related to Woods' death or that there was a causal connection between their actions and his injuries. Because the Defendants cannot be vicariously liable for the action of subordinate employees, the § 1983 claim of deliberate indifference must be dismissed.

## IV. Qualified Immunity Bars the Plaintiff's Deliberate Indifference Claim Against the Defendants.

To the extent the Defendants have been sued in their individual capacities, they are also entitled to qualified immunity. The basic test for qualified immunity was stated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. 457 U.S. at 818. Qualified immunity bars claims "so long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Further, qualified immunity is not just a bar to damages, it is a bar to suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity. *See Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial").

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every action they make. This would have a serious chilling effect on the ability of such officials to do their jobs. In sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner.

4

*Mitchell*, 472 U.S. at 525-26; see also *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Burrell v. Bd. of Trustees of Ga. Military College*, 970 F.2d 785, 794 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1983). In order to establish that they were acting within their "discretionary capacity," public officials asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir.1981)). Courts should not be "overly narrow" in interpreting this requirement. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). As one district judge from the Middle District of Alabama has observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Defendants easily clear the "low hurdle" of demonstrating that any dealings they had with Woods was within their discretionary authority. Everything alleged in the Complaint describes the Defendants doing what correctional officials do: supervising and controlling the care and custody of inmates. Of course the Plaintiff may allege that Defendants carried their duties out negligently, incompetently or even unconstitutionally, but making decisions about an inmate is a duty normally associated with what correctional officials do—that is the standard for the finding of discretionary authority.

Once determined that the officers acted within their discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. In *Saucier v. Katz*, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. *Saucier v. Katz*,

5

533 U.S. 194, 201 (2001). However, the Court has abandoned the rigid order of analysis enunciated in *Saucier* and stated that courts are no longer required to first determine whether there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, 129 S. Ct. at 818. Here qualified immunity applies both because the allegations do not state a claim of a constitutional violation and because the alleged violation as claimed was not clearly established at the time the Defendants are alleged to have acted.

Where the plaintiff asserts claims against multiple defendants, the complaint must give each individual defendant fair notice of the nature of the plaintiff's claims and the grounds on which the claims rest. *See, e.g., Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (holding that "in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of" the plaintiff's claims against it); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (holding that the plaintiff's 'shotgun' complaint was improper where the plaintiff failed to identify which facts were applicable to which claim and *which claims were applicable to which defendant*); *Lane v. Capital Acquisitions & Mgmt. Co.*, 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [plaintiff's] Complaint fails to satisfy the minimum standard" of pleading.).

## V. State-Agent Immunity Bars Plaintiff's Claims for Negligent Training and Supervision.

This Court should dismiss the Plaintiff's state law claim of wrongful death (Count II) as to the Defendants in their individual capacities on the ground that this claim is barred by state-agent immunity. In *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), the Alabama Supreme Court established the following test for state-agent immunity:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration in of a department or agency of government, including, but not limited to, examples such as:
>
>     (a) making administrative adjudications;
>
>     (b) allocating resources;
>
>     (c) negotiating contracts;
>
>     (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated

7

>    for the purpose of regulating the activities of a governmental agency require
>    otherwise; or
>
> (2)    when the State agent acts willfully, maliciously, fraudulently, in bad
>    faith, beyond his or her authority, or under a mistaken interpretation
>    of the law.

*Cranman*, 792 So.2d at 405 (Emphasis in original). Although *Cranman* was a plurality opinion, its law as to state-agent immunity was adopted by the Court's opinion in *Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000) and *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000).

As noted above, a state agent *shall* be immune from liability when the conduct on which the claim is based is the state agent's "formulating plans, policies, or designs"; and "hiring, firing, transferring, assigning, or supervising personnel." *Cranman*, 792 So. 2d at 405. Because *Cranman* specifically established that state agents *shall* be immune from liability for claims based on this alleged conduct, this Court should dismiss these claims.

In an illustrative case, the Alabama Supreme Court held that state-agent immunity shielded the City of Huntsville's police chief on claims that he negligently failed to train and supervise two Huntsville police officers and Huntsville City jail personnel. *Walker v. City of Huntsville*, 62 So. 3d 474 (Ala. 2010). In Walker, the plaintiff was arrested for driving under the influence and unlawfully stopping her car at an intersection, was detained in the city's jail for 24 hours, and was prosecuted for both charges. *Walker*, 62 So. 3d at 478. The plaintiff, however, was not under the effect of drugs or alcohol at the time of her arrest. *Id.* She was instead suffering from a brain aneurysm, which went undetected by the arresting officers and jail personnel. *Id*. At 480-85. In evaluating the plaintiff's claims against the Huntsville police chief for negligent training and supervision of police officers and jail personnel, the Court held that claims were barred by state-agent immunity because they fell squarely within *Cranman's* categories of "formulating plans policies and designs" and "hiring, firing, transferring, assigning, or supervising personnel." *Id*. at

8

499. Indeed, "[t]here is no exception under *Cranman* for tortious conduct unless the State agent 'acts willfully, maliciously, fraudulently, in bad faith, beyond…his authority, or under a mistaken interpretation of the law.'" *Ex parte Nall*, 879 So. 2d 541, 546 (Ala. 2003), quoting *Cranman*, 792 So. 2d at 405.

In a wrongful death case in which a two-month old infant was killed by a day care worker, after a social worker failed to detect that the day care worker was administering medication without parental consent or documentation, the Alabama Supreme Court held that the claims against the social worker was barred by state-agent immunity. *Ex parte Randall*, 971 So. 2d 652 (Ala. 2007). Even though the Court conceded that the social worker was "either quite gullible or negligent or perhaps even reckless," the Court explained that such conduct was consistent only with negligent or wanton behavior. *Id.* at 664. As the Court explained, "[t]his Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness or maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*." State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003).

The Plaintiff's claim of wrongful death is barred by state-agent immunity. Therefore, the Defendants ask this Court to dismiss this claim against them.

## VI.     Plaintiff has Failed to State a Claim Upon Which Relief Can Be Granted for the claim of Wrongful Death.

In Count II of the complaint, Plaintiff brings a claim under Alabama's Wrongful Death Statute, codified at Ala. Code §6-5-410 (1975), *et. seq*. As to the executor of Woods' estate, to prosecute a successful action, the Plaintiff must show wrongful acts, omissions, or negligence of

9

the Defendants, where, had those acts not caused death, the decedent could have commenced an action for such acts.  Here, Plaintiff cannot do so.  The basis of this claim is the failure to properly separate Woods from an attacker.  As argued above, that claim is unsustainable on the basis of state-agent immunity, is without merit, and could not have served as a proper cause of action in the event that Cummings was not killed.

Even if the Plaintiff's allegations are true, the alleged tortious conduct of unnamed corrections officers cannot be imputed to these Defendants.  *Taylor v. Alabama*, 95 F. Supp. 2d. at 1319.  "Under certain circumstances, an employer may be held liable for the tortious acts of its employees on a ratification theory."  *Id*., see *Lynn v. United Technologies, Corp*., 916 F.Supp. 1217, 1220 (M.D. Ala. 1996) (holding "no authority exists for the proposition that liability for alleged tortious acts may be imputed to an individual supervisor or co-employee.").  Although under this theory an employer may be held liable for tortious acts of its employees, a supervisor – even one who ratifies the act alleged – may not be held liable. *Taylor*, 95 F. Supp. 2d at 1319.

## CONCLUSION

Wherefore, based on the foregoing, the Defendants request that this Court enter an order dismissing the all claims against them.

Respectfully submitted this 17th day of October 2019.

**s/C. Richard Hill, Jr.**
C. RICHARD HILL, JR. (HIL045)

**s/Robert F. Northcutt**
ROBERT F. NORTHCUTT (ASB-9358-T79R)

OF COUNSEL:
Capell & Howard, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8043

Facsimile: (334) 241-8243
Email:  rick.hill@chlaw.com
          bob.northcutt@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and have placed a copy of it in the United States Mail, postage prepaid to the following:

Angela M. Wood
405 Beulah Street
Dothan, AL  36303

**s/C. Richard Hill, Jr.**
OF COUNSEL